UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ADVANCED CARD TECHNOLOGIES LLC, a New York limited liability company<br><br>Plaintiff,<br><br>vs.<br><br>HARVARD LABEL, INC., a California corporation, and ONE STOP PLASTIC CARD, INC., a California corporation,<br><br>Defendants. | Case No. CIV-07-1269 D<br><br>**HARVARD LABEL, INC.'S ANSWER TO THIRD AMENDED COMPLAINT AND COUNTERCLAIMS FOR DECLARATORY RELIEF** |
| HARVARD LABEL, INC., a California corporation, ONE STOP PLASTIC CARD, INC., a California corporation<br><br>Counterclaimants,<br><br>vs.<br><br>ADVANCED CARD TECHNOLOGIES LLC, a New York limited liability company, ,<br><br>Counterdefendant. | |

Defendant and Counterclaimant Harvard Label, Inc. answers the Third Amended Complaint of Plaintiff and Counterdefendant Advanced Card Technologies, LLC ("ACT"), as follows:

## BACKGROUND

1.     In response to paragraph 1 of the Third Amended Complaint, Harvard Label denies that it is infringing or has infringed U.S. Patent Nos. 5,720,158 and 5,921,584. Harvard Label is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 1 of the Complaint.

2.     In response to paragraph 2 of the Third Amended Complaint, Harvard Label is without sufficient knowledge or information to form a belief as to the truth of these allegations.

3.     In response to paragraph 3 of the Third Amended Complaint, Harvard Label is

without sufficient knowledge or information to form a belief as to the truth of these allegations.

4.    In response to paragraph 4 of the Third Amended Complaint, Harvard Label denies that it is infringing or has infringed U.S. Patent Nos. 5,720,158 and 5,921,584.  Harvard Label is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 4 of the Complaint.

## PARTIES

5.    In response to paragraph 5 of the Third Amended Complaint, Harvard Label is without sufficient knowledge or information to form a belief as to the truth of these allegations.

6.    In response to paragraph 6 of the Third Amended Complaint, Harvard Label admits that it is a California corporation and that its principal place of business is 4731 Fruitland Avenue, Vernon, California 90058.

7.    In response to paragraph 7 of the Third Amended Complaint, Harvard Label admits that One Stop is a California corporation with its principal place of business located at 4731 Fruitland Avenue, Vernon, California 90058.

## JURISDICTION AND VENUE

8.    In response to paragraph 8 of the Third Amended Complaint, Harvard Label admits that this Court has subject matter jurisdiction over the dispute.  Harvard Label, however, denies that ACT is entitled to any damages and Harvard Label denies that Defendants are infringing or have infringed U.S. Patent Nos. 5,720,158 and 5,921,584.

9.    In response to paragraph 9 of the Third Amended Complaint, Harvard Label denies all allegations.

10.    In response to paragraph 10 of the Third Amended Complaint, Harvard Label denies all allegations.

## FIRST CLAIM FOR RELIEF

11.    In response to paragraph 11 of the Third Amended Complaint, Harvard Label

repeats and incorporates by reference its answer to the allegations set forth in paragraphs 1 through 10 above.

12.    In response to paragraph 12 of the Third Amended Complaint, Harvard Label denies that the '158 patent was duly and legally issued.  Harvard Label is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations.

13.    In response to paragraph 13 of the Third Amended Complaint, Harvard Label is without sufficient knowledge or information to form a belief as to the truth of these allegations.

14.    In response to paragraph 14 of the Third Amended Complaint, Harvard Label denies all allegations.

15.    In response to paragraph 15 of the Third Amended Complaint, Harvard Label denies all allegations.

16.    In response to paragraph 16 of the Third Amended Complaint, Harvard Label denies all allegations.

## SECOND CLAIM FOR RELIEF

17.    In response to paragraph 17 of the Third Amended Complaint, Harvard Label repeats and incorporates by reference its answer to the allegations set forth in paragraphs 1 through 16 above.

18.    In response to paragraph 18 of the Third Amended Complaint, Harvard Label denies that the '584 patent was duly and legally issued.  Harvard Label is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations.

19.    In response to paragraph 19 of the Third Amended Complaint, Harvard Label is without sufficient knowledge or information to form a belief as to the truth of these allegations.

20.    In response to paragraph 20 of the Third Amended Complaint, Harvard Label denies all allegations.

21.    In response to paragraph 21 of the Third Amended Complaint, Harvard Label denies all allegations.

22.    In response to paragraph 22 of the Third Amended Complaint, Harvard Label

denies all allegations.

## AFFIRMATIVE DEFENSES

23.    Harvard Label asserts the following affirmative defenses to the Third Amended Complaint.  Assertion of a defense does not concede that Harvard Label has a burden of proving the matter asserted.

## FIRST AFFIRMATIVE DEFENSE

## (Non-Infringement and Absence of Liability for Infringement)

24.    Harvard Label and its products have not infringed, directly, contributorily or by inducement and do not infringe directly, contributorily or by inducement, any valid claim of the '158 Patent or the '584 Patent.

## SECOND AFFIRMATIVE DEFENSE

## (Noninfringement)

25.    Because of the prior state of the art, because of the language of the claims of the '158 Patent and the '584 Patent, respectively, and because of the proceedings in the United States Patent and Trademark Office during the prosecution of the applications which led to the issuance of the '158 Patent, the '584 Patent, respectively, and the reexaminations, ACT is estopped from maintaining that the claims cover any products of Harvard Label and, therefore, is estopped from maintaining that Harvard Label has directly infringed or induced anyone to infringe any claims of the '158 Patent or the '584 Patent.

## THIRD AFFIRMATIVE DEFENSE

## (Invalidity)

26.    Each of the claims of the '158 Patent and the '584 Patent are invalid and void for failing to comply with one or more of the requirements for patentability specified in Title 35, U.S. Code, §§ 102, 103 and 112.

## FOURTH AFFIRMATIVE DEFENSE

## (Laches)

27.    Each of ACT's causes of action is barred by the doctrine of laches.

## FOURTH AFFIRMATIVE DEFENSE

### (Equitable Estoppel)

28.     Each of ACT's causes of action is barred by equitable estoppel.

## FIFTH AFFIRMATIVE DEFENSE

### (Intervening Rights)

29.     Each of ACT's causes of action is barred by the doctrine of absolute and equitable intervening rights.

## SIXTH AFFIRMATIVE DEFENSE

### (Inequitable Conduct)

30.     Each of ACT's causes of action is barred, and the '158 Patent and the '584 Patent are unenforceable, due to inequitable conduct committed by ACT and the inventor Ron Goade.

31.     Applicants for patents are required to prosecute patent applications in the United States Patent and Trademark Office ("USPTO") with candor, good faith and honesty. The inequitable conduct uncovered thus far in this case includes affirmative misrepresentations of material fact and failure to disclose material information, all with the intent to deceive the USPTO.

**A.     Affirmative Misrepresentations of Material Fact**

32.     On at least three separate occasions, on June 23, 2003, on April 14, 2004, on June 18, 2004, ACT submitted a declaration to the USPTO from inventor Ron Goade that contained affirmative misrepresentations of material fact.

**1.     Misrepresentations Made During the '158 Reexamination**

33.     In Mr. Goade's June 23, 2003 Declaration submitted under 37 CFR 1.131 (the "Goade 131 Declaration (6/23/03)"), Mr. Goade attempts to "swear behind" at least two prior art references, UK Patent Application No. GB 2,281,714A published on March 15, 1995 ("UK Application") and Warther, United States Patent No. 5,495,981, filed on February 4, 1994.

34.     On June 23, 2003, ACT filed an Amendment with the USPTO that responded to an Office Action mailed on April 21, 2003. In this submission, ACT admits that the UK

Application is "prior art under 35 U.S.C. § 102(a)" and that the "Warther '981 patent is prior art under 35 U.S.C. § 102(e)". ACT relied on the Goade 131 Declaration (6/23/03) to "establish invention of the subject matter of the pending claims prior to the effective dates of the UK Application and the Warther '981 patent."

35.    On July 31, 2003, ACT filed a Revised Amendment and again relied on the Goade 131 Declaration (6/23/03) to overcome the UK Application and Warther '981, arguing that "these references cannot be used to reject the claims that are the subject of this reexamination proceeding."

36.    ACT later admitted that the Warther '981 Patent was entitled to a filing date of December 17, 1990 and that ACT could no longer rely on the Goade 131 Declaration (6/23/03) to overcome Warther '981, but still relied on the declaration to overcome the UK Application.

37.    On March 28, 2005, the Examiner issued a Notice of Intent to Issue Ex Parte Reexamination Certificate. In response to ACT's amendment, the Examiner affirmatively relied on the Goade 131 Declaration (6/23/03) to overcome the UK Application which ACT had admitted is prior art under 35 U.S.C. § 102(a), stating that "[t]he declaration of Mr. Goade filed on 23 June 2003 under 37 CFR 1.131 is sufficient to overcome the GB 2,281,714 A reference which was filed with an IDS dated 23 June 2003."

38.    The Goade 131 Declaration (6/23/03) that ACT submitted to the USPTO, and upon which the Examiner affirmatively relied, contains affirmative misrepresentations of material fact.

39.    Mr. Goade states at paragraphs 4 and 5 that "[p]rior to February 4, 1994, having earlier conceived of the invention of each of the Pending Claims, I instructed and caused certain employees of SSI to make prototype card display packages (each a '*Prototype Card Package*')" and that "[p]rior to February 4, 1994, I received Prototype Card Packages, which included each of the elements recited in each of the Pending Claims" and that a "true and correct photocopy of a Prototype Card Package is shown in Exhibit A hereto."

40.    Attached as Exhibit A is what appears to be a prototype Blockbuster Universal

Membership Card mailer with two cards attached to a card holder. This sample card product which Mr. Goade affirms in this 131 Declaration was created prior to February 4, 1994, was the only corroborating evidence showing any sort of prototype. ACT has now admitted that this prototype Blockbuster card was conceived of and created well *after* February 4, 1994. Mr. Goade's statement that this prototype was conceived and reduced to practice prior to February 4, 1994 is demonstrably false.

41.    Mr. Goade has now admitted during discovery that at the time he submitted his 131 Declaration (6/23/03), no corroborating evidence of his conception and reduction to practice of the claimed inventions existed.

42.    In a declaration served by ACT and Mr. Goade in this matter dated November 11, 2009, ACT and Mr. Goade admit that in 1998, a company called DocuSystems purchased Mr. Goade's company SSI. Mr. Goade states that he left that company in 1999 and he left *all* of his "conception documents and Blockbuster-related documents in the DocuSystems' office building." Mr. Goade states that in 2000, he bought the company back from DocuSystems and learned that "old customer files, as well as other files that were older than two years had been destroyed pursuant to a two-year document destruction policy" and that DocuSystems' destruction of documents included documents relating to the conception, reduction to practice, development, purchase orders, offers of sale, and correspondence relating to the Patents-in-Suit and/or the subject inventions." Mr. Goade now admits that "*all that remained* of the documents I had left in my office when I departed was a list of inventory and some financial figures." (emphasis added).

43.    Thus, in 2003, when faced with a rejection of claims by the Examiner based on the UK Application (which is prior art under 35 U.S.C. § 102(a)), upon information and belief, ACT and Mr. Goade knew that no documents could corroborate Mr. Goade's testimony that the dates of conception and reduction to practice were prior to February 4, 1994. To the extent those documents ever existed (which now appears unlikely), those documents were intentionally destroyed years earlier by the company that apparently owned the '158 Patent at that time.

-7-

44.    Faced with losing out on a lucrative revenue stream from its licensing of the patents in suit, ACT and Mr. Goade intentionally misrepresented that the prototype Blockbuster card attached as Exhibit A to his declaration was created before February 4, 1994.

45.    In its verified interrogatory responses in this case, ACT has now confirmed that the prototype Blockbuster card product shown in Exhibit A of the Goade 131 Declaration (6/23/03) was created *after* Mr. Goade was contacted by Blockbuster to create a specific card product for Blockbuster and *after* "numerous trips to Blockbuster to meet with Art DeLaurier." ACT has also verified that Mr. Goade first met with Mr. DeLaurier on June 30, 1994. Therefore, the prototype Blockbuster card depicted in Exhibit A of the Goade 131 Declaration (6/23/03), based on ACT's own verified interrogatory responses, could not possibly have been created prior to February 4, 1994, as Mr. Goade fraudulently stated in his 131 Declaration (6/23/03).

46.    In addition, the prototype Blockbuster card submitted as Exhibit A to the Goade 131 Declaration (6/23/03) contains a hand-written notation "A Viacom Company" and includes a hand-written notation to move the "®" to a different location on the card.  Based on email correspondence produced by ACT in the case, it appears that Blockbuster first asked Mr. Goade directly to include the language "A Viacom Company" and to move the "®" to a different location on the card in an email to Mr. Goade dated February 22, 2005, which is over a year *after* February 4, 1994.

47.    Also, the prototype Blockbuster card submitted as Exhibit A to the Goade 131 Declaration (6/23/03) contains the wording "PATENT PENDING." This is significant because the original patent application for the claims purportedly embodied in this prototype was not filed until June 30, 1995, which is almost a year and four months *after* February 4, 1994.

48.    Tellingly, the prototype submitted as Exhibit A to the Goade 131 Declaration (6/23/03) contains no date whatsoever.

49.    In addition, in a Declaration Mr. Goade submitted in this action dated November 11, 2009, Mr. Goade states that he "invented the inventions disclosed and claimed in the Patents-in-Suit between 1995 and 1996," which is well after February 4, 1994.

50.     In addition, upon information and belief, Mr. Goade has testified in a deposition in a prior lawsuit that he did not conceive, make, or test the prototype Blockbuster card until after February 4, 1994 and that the documents submitted to the USPTO to support an earlier conception date had nothing to do with the prototype Blockbuster card that was the subject of his declarations.

51.     Based on these admissions by Mr. Goade and ACT, and upon information and belief, when ACT submitted Mr. Goade's 131 Declaration (6/23/03) to the USPTO, ACT and Mr. Goade knew that Mr. Goade's statement that the prototype Blockbuster card attached as Exhibit A was created before February 4, 1994, was false.  The false statement was material. The Examiner specifically and affirmatively relied on that purportedly corroborating evidence to overcome the UK Application which directly led to the issuance of numerous claims upon reexamination.    Without any corroborating evidence and without Mr. Goade's false representation, ACT would not have overcome the prior art and one or more claims of the '158 Patent would not have issued on reexamination.

52.     In addition to the purported prototype Blockbuster card, ACT and Mr. Goade also submitted a purported price quotation.  Mr. Goade states in his 131 Declaration (6/23/03) that "Exhibit B is a true and correct copy of the Quotation . . . for the purpose of determining SSI's cost to manufacture Prototype Card Packages." This is the only document submitted that purportedly corroborates a conception and reduction to practice date prior to February 4, 1994 (although ACT and Mr. Goade redacted the actual date from the document it submitted to the USPTO.)

53.     This statement is also demonstrably false.

54.     In an Affidavit ACT and Mr. Goade submitted in this action dated November 11, 2009, Mr. Goade declared that any such corroborating documents were intentionally destroyed between 1998 and 2000.

55.     In this same Affidavit, Mr. Goade also states that he "invented the inventions disclosed and claimed in the Patents-in-Suit between 1995 and 1996." Thus, a price quotation

dated prior to February 4, 1994 could not correspond with a card product that was not invented until 1995 or 1996.

56.    In addition, the price quotation indicates that the size of the card product is 8.0" x 3 3/4".  Upon review of the photograph of the prototype, and upon information and belief, the dimensions stated in the Quotation do not correspond with the dimensions of the prototype card Mr. Goade submitted with his 131 Declaration (6/23/03).

57.    In addition, upon information and belief, Mr. Goade has testified in a deposition in a prior lawsuit that he did not conceive, make, or test the prototype Blockbuster card until after February 4, 1994 and that the documents submitted to the USPTO to support an earlier conception date had nothing to do with the prototype Blockbuster card that was the subject of his declarations.

58.    Thus, upon information and belief, ACT and Mr. Goade knew that the Quotation submitted as Exhibit B to the Goade 131 Declaration (6/23/03) was not a true and correct copy of a Quotation for the purpose of determining SSI's cost to manufacture Prototype Card Packages created prior to February 4, 1994.

59.    This Quotation was material to the Examiner's decision.   It was the only purportedly corroborating evidence of a date of conception and reduction to practice submitted to the USPTO.  Without this corroborating evidence, the Examiner could not have even considered the Goade 131 Declaration (6/23/03).   The Examiner affirmatively relied on Mr. Goade's representation and one or more claims of the '158 Patent issued on reexamination based on Mr. Goade's representation to the USPTO that was knowingly false.

60.    On June 18, 2004, ACT filed a "Supplemental Declaration of Ron E. Goade, Sr. Under 37 CFR 1.131" which ACT asserts was intended to replace the June 23, 2003 Goade 131 Declaration.   In its Transmittal, ACT states that the "only change made is the insertion of paragraph 4 to amplify that all of the acts described in the declaration occurred within this country (the State of Oklahoma, U.S.A.)."   Thus, the Supplemental Declaration contains the same material representations of material fact as the original 131 Goade Declaration (6/23/03)

and is further evidence of ACT's and Mr. Goade's inequitable conduct.

## 2.   Misrepresentations Made During the '584 Reexamination

61.    In Mr. Goade's April 14, 2004 Declaration submitted under 37 CFR 1.131 (the "Goade 131 Declaration (4/14/04)"), Mr. Goade attempts to "swear behind" at least three prior art references cited against ACT during the reexamination of the '584 Patent. On October 15, 2003, the Examiner rejected Claims 1-6 of the '584 Patent under 35 U.S.C. § 102(a) as being anticipated by Warther, United States Patent No. 5,495,981 ("Warther '981"). The examiner rejected Claims 1-6 of the '584 Patent under 35 U.S.C. § 103(a) as being obvious and unpatentable over Warther, United States Patent No. 4,978,146 ("Warther '146") in view of Byrne, United Kingdom Patent No. 2,281,714 ("Byrne"). The examiner rejected claims 3-6 of the '584 Patent under 35 U.S.C. § 103(a) as being obvious and unpatentable over Byrne in view of Warther '146.

62.    In response to this office action, on April 14, 2004, ACT submitted the Goade 131 Declaration (4/14/04) in order to attempt to "swear behind" Byrne, Warther '981 and Warther '146 by providing Mr. Goade's testimony and supposedly corroborating evidence that Mr. Goade conceived and reduced to practice the inventions taught in claims of the '584 Patent prior to the effective dates of the Byrne, Warther '981 and Warther '146 references.

63.    During reexamination, ACT relied extensively on the Goade 131 Declaration (4/14/04). ACT argued to the Examiner that "[i]n view of the 131 Declaration, Claim 3 is patentable over Byrne, Warther '146, and the other art of record." In addition, ACT argued that:

> The Rule 131 Declaration establishes possession of "the invention (i.e., the basic inventive concept)" shown in the Rule 131 Declaration, and embodied in Claim 1, prior to February 4, 1994, which is earlier than the effective date of Byrne (March 15, 1995). Therefore, Claim 3 which includes only an obvious modification -- is patentable over the proposed combination of Byrne with Warther '146. The Rule 131 Declaration is appropriate to overcome this rejection because the publication date of Byrne (March 15, 1995) is not more than one year prior to the effective filing date of Claim 1 (June 30, 1995). Claim 1 is entitled to the effective filing date of June 30, 1995 because (a) this case is a continuation-in-part of serial number *08/497,186,* which was filed on June 30, 1995 (now U.S. Patent No. 5,720,158) and (b) these claims are supported by the disclosure of the parent application. Support for Claim 1 is found, for example, in the application that issued into the '158 Patent at page 3, lines 19-26 and page 4, lines 13-21. Claims 80-89, 93, 99, and 105, which depend from Claim 3, are also patentable over Byrne, Warther '146, and the other art of record for the same reasons as Claim 3, and

because they necessarily include additional limitations.

In addition, ACT relied extensively upon the Goade 131 Declaration (4/14/04) to overcome these same three references with respect to its new proposed claims 13-89 and 93-112.

64.    On March 28, 2005, the Examiner issued a Notice of Intent To Issue Ex Parte Reexamination Certificate and specifically relied on the Goade 131 Declaration (4/14/04), explaining that the Declaration "is sufficient to overcome the Fiala et al. (US 5,918,909) reference" and "is sufficient to overcome the Byrne (GB 2,281,714) reference with regard to those claims which do not include the limitation 'an aperature,' namely claims 7-23, 25-38, 40-53, 55-66, 68-79, 90-92, 94-98, 100-104 and 113-121."

65.    The Goade 131 Declaration (4/14/04) that ACT submitted to the USPTO, and upon which the Examiner affirmatively relied, contains affirmative misrepresentations of material fact.

66.    Mr. Goade states at paragraphs 5 and 6 that "[p]rior to February 4, 1994, having earlier conceived of the invention of each of the First Set of Claims, I instructed and caused certain employees of SSI to make prototype card display packages (each a '*First Prototype Card Display Package*')" and that "[p]rior to February 4, 1994, I received from those employees First Prototype Card Display Packages, which included each of the elements recited in each of the First Set of Claims" and that a "true and correct photocopy of such a First Prototype Card Display Package is shown in Exhibit A hereto."

67.    Attached as Exhibit A is what appears to be a prototype Blockbuster Universal Membership Card mailer with two cards attached to a card holder.  This sample card product which Mr. Goade affirms in this 131 Declaration was created prior to February 4, 1994, was the only purportedly corroborating evidence of a prototype submitted with the Goade 131 Declaration (4/14/04).  ACT has now admitted that this prototype Blockbuster card was conceived of and created well *after* February 4, 1994.  Upon information and belief, Mr. Goade's statement that this prototype was conceived and reduced to practice prior to February 4, 1994 is demonstrably false.

68.    Mr. Goade has now admitted during discovery that at the time he submitted his 131 Declaration (4/14/04), no corroborating evidence of his conception and reduction to practice of the claimed inventions existed.

69.    In a declaration served by ACT and Mr. Goade in this matter dated November 11, 2009, ACT and Mr. Goade admit that in 1998, a company called DocuSystems purchased Mr. Goade's company SSI. Mr. Goade states that he left that company in 1999 and he left *all* of his "conception documents and Blockbuster-related documents in the DocuSystems' office building." Mr. Goade states that in 2000, he bought the company back from DocuSystems and learned that "old customer files, as well as other files that were older than two years had been destroyed pursuant to a two-year document destruction policy" and that DocuSystems' destruction of documents included documents relating to the conception, reduction to practice, development, purchase orders, offers of sale, and correspondence relating to the Patents-in-Suit and/or the subject inventions." Mr. Goade now admits that "***all that remained*** of the documents I had left in my office when I departed was a list of inventory and some financial figures." (emphasis added).

70.    Thus, in 2004, when faced with a rejection of claims by the Examiner based on three prior art references, upon information and belief, ACT and Mr. Goade knew that no documents could corroborate his testimony that the dates of conception and reduction to practice were prior to February 4, 1994. To the extent those documents ever existed (which appears unlikely), those documents were intentionally destroyed years earlier by the company that apparently owned the '158 Patent at that time.

71.    Faced with losing out on a lucrative revenue stream from its licensing of the patents in suit, upon information and belief, ACT and Mr. Goade intentionally misrepresented that the prototype Blockbuster card attached as Exhibit A to Mr. Goade's declaration was created before February 4, 1994.

72.    In its verified interrogatory responses, ACT has now confirmed that the prototype Blockbuster card product shown in Exhibit A of the Goade 131 Declaration (4/14/04) was

created *after* Mr. Goade was contacted by Blockbuster to create a specific card product for Blockbuster and *after* "numerous trips to Blockbuster to meet with Art DeLaurier." ACT has also verified that Mr. Goade first met with Mr. DeLaurier on June 30, 1994. Therefore, the prototype Blockbuster card depicted in Exhibit A of the Goade 131 Declaration (4/14/04), based on ACT's own verified interrogatory responses, could not possibly have been created prior to February 4, 1994, as Mr. Goade fraudulently stated in his 131 Declaration (4/14/04).

73.    In addition, the prototype Blockbuster card submitted as Exhibit A to the Goade 131 Declaration (4/14/04) contains a hand-written notation "A Viacom Company" and includes a hand-written notation to move the "®" to a different location on the card. Based on email correspondence produced by ACT in the case, it appears that Blockbuster first asked Mr. Goade directly to include the language "A Viacom Company" and to move the "®" to a different location on the card in an email to Mr. Goade dated February 22, 2005, which is over a year *after* February 4, 1994.

74.    Also, the prototype Blockbuster card submitted as Exhibit A to the Goade 131 Declaration (4/14/04) contains the wording "PATENT PENDING." This is significant because the original patent application for the claims purportedly embodied in this prototype was not filed until June 30, 1995, which is almost a year and four months *after* February 4, 1994.

75.    Tellingly, the prototype submitted as Exhibit A to the Goade 131 Declaration (4/14/04) contains no date whatsoever.

76.    In addition, in a Declaration ACT and Mr. Goade submitted in this action dated November 11, 2009, Mr. Goade states that he "invented the inventions disclosed and claimed in the Patents-in-Suit between 1995 and 1996," which is well after February 4, 1994.

77.    In addition, upon information and belief, Mr. Goade has testified in a deposition in a prior lawsuit that he did not conceive, make, or test the prototype Blockbuster card until after February 4, 1994 and that the documents submitted to the USPTO to support an earlier conception date had nothing to do with the prototype Blockbuster card that was the subject of his declarations.

78.     Based on these admissions by Mr. Goade and ACT, and upon information and belief, when ACT submitted Mr. Goade's 131 Declaration (4/14/04) to the USPTO, ACT and Mr. Goade knew that Mr. Goade's statement that the prototype Blockbuster card attached as Exhibit A was created before February 4, 1994 was false.

79.     Mr. Goade's false statement was material.  The Examiner specifically relied on that purportedly corroborating evidence to overcome at least the Fiala et al. reference (US 5,918,909) reference and Byrne '714 which directly led to the issuance of one or more claims upon reexamination.  Without any corroborating evidence and without Mr. Goade's false representation, ACT would not have overcome the prior art and one or more claims of the '584 Patent would not have issued on reexamination.

80.     In addition to the purported prototype card, ACT and Mr. Goade also submitted a purported price quotation that Mr. Goade states in his 131 Declaration (4/14/04) was created "for the purpose of determining SSI's cost to manufacture First Prototype Display Card Packages." This is the only document that purportedly corroborates a conception and reduction to practice date prior to February 4, 1994 submitted to the USPTO (even though ACT and Mr. Goade redacted the actual date from the document it submitted to the USPTO.)

81.     Mr. Goade's statement in his 131 Declaration (4/14/04) that "Exhibit B is a true and correct copy of the Quotation . . . for the purpose of determining SSI's cost to manufacture First Prototype Display Card Packages" is also demonstrably false.

82.     In an Affidavit ACT and Mr. Goade submitted in this action dated November 11, 2009, Mr. Goade declared that any such corroborating documents were intentionally destroyed between 1998 and 2000.

83.     In this same Affidavit, Mr. Goade also states that he "invented the inventions disclosed and claimed in the Patents-in-Suit between 1995 and 1996." Thus, a price quotation dated prior to February 4, 1994 could not correspond with a card product that was not invented until 1995 or 1996.

84.     In addition, the price quotation indicates that the size of the card product is 8.0" x

-15-

3 3/4". Upon review of the photograph of the prototype, and upon information and belief, the dimensions stated in the Quotation do not correspond to the dimensions of the prototype card Mr. Goade submitted with his 131 Declaration (4/14/04).

85.    In addition, upon information and belief, Mr. Goade has testified in a deposition in a prior lawsuit that he did not conceive, make, or test the prototype Blockbuster card until after February 4, 1994 and that the documents submitted to the USPTO to support an earlier conception date had nothing to do with the prototype Blockbuster card that was the subject of his declarations.

86.    Thus, upon information and belief, ACT and Mr. Goade knew that the Quotation submitted as Exhibit B to the Goade 131 Declaration (4/14/04) was not a true and correct copy of a Quotation for the purpose of determining SSI's cost to manufacture First Prototype Display Card Packages created prior to February 4, 1994.

87.    This Quotation was material to the Examiner's decision. It was the only purportedly corroborating evidence of a conception and reduction to practice date submitted to the USPTO. Without this evidence, the Examiner could not have considered the Goade 131 (4/14/04) Declaration. The Examiner, however, did rely on Mr. Goade's representation, and one or more claims of the '584 Patent issued on reexamination based on Mr. Goade's representation to the USPTO that was knowingly false.

**B.    The Inventor Failed To Disclose Material Information to the USPTO During Prosecution of the '158 and '584 Patents**

88.    During the original prosecution of the '158 and '584 Patents, Mr. Goade engaged in additional inequitable conduct by failing to disclose known prior art under 35 U.S.C. § 102(b).

89.    Upon information and belief, on May 20, 1994, Mr. Goade, the named inventor of the '158 Patent and the '584 Patent, sent a price quotation to Art DeLaurier of Blockbuster for 900,000 "Two Card Mailers" for $ .397 each, along with a detailed illustration of the Two Card Mailers.

90.    Upon information and belief, the card product illustrated in the May 20, 1994

Quotation was designed by Vanguard. This reference discloses an information card package that anticipates all the claim limitations of at least Claims 2, 3, 4, 5, 6, and 7 of the originally issued '158 Patent. In addition, this reference, in combination with one or more references, would render obvious all claims of the '158 Patent and the '584 Patent.

91.     In addition, the May 20, 1994 Quotation anticipates all the draft claims originally asserted by Mr. Goade in patent application serial number 08/497,186, which eventually matured into the '158 patent.

92.     Upon information and belief, Mr. Goade first learned about the Two Card Mailers prior to May 20, 1994.

93.     Upon information and belief, Mr. Goade knew that Vanguard had been manufacturing and selling this Two Card Mailer well before May 20, 1994.

94.     Upon information and belief, Mr. Goade had actual knowledge and possession of the May 20, 1994 Quotation on or before May 20, 1994, which was more than one year prior to the date that Mr. Goade filed his application which led to the '158 Patent, on June 30, 1995, and more than two years prior to filing the application which led to the '584 Patent.

95.     Upon information and belief, based on Mr. Goade's experience with these types of card products, Mr. Goade's knowledge that Vanguard designed these card products and had been offering them for sale before May 20, 1994, Mr. Goade's past experience with the USPTO prior to 1994 as an inventor, Mr. Goade's extensive communications with Blockbuster regarding this card product, and Mr. Goade's knowledge that his own company was manufacturing this product for Blockbuster, Mr. Goade had actual knowledge and should have known that the card product identified in the May 20, 1994 Quotation was material and anticipated all the proposed claims that Mr. Goade submitted with his patent application for the '158 Patent, and anticipated, or in conjunction with one or more references, rendered obvious, all claims of the '158 Patent and '584 Patent. Upon information and belief, Mr. Goade intentionally concealed this document from the USPTO during the examinations of the applications that led to the '158 Patent and the '584 Patent, respectively.

96.    After the fact, during the reexamination of the '158 Patent, ACT did disclose the May 20, 1994 Quotation to the USPTO, even though the Examiner, on reexamination, is not allowed to consider this type of reference.

97.    Upon information and belief, Mr. Goade knowingly failed to disclose the May 20, 1994 Quotation to the USPTO during examinations of the '158 Patent and the '584 Patent. Mr. Goade had good reason to not disclose the May 20, 1994 Quotation. Disclosure of this reference would have been fatal to his patent applications.

98.    Upon information and belief, Mr. Goade and his company SSI intended to seek an unfair and anti-competitive business advantage over competitors by attempting to patent an invention that was publicly offered for sale more than one year before the filing of Mr. Goade's patent applications.

99.    In addition, on information and belief, Mr. Goade and SSI intended to gain substantial licensing revenues under the '158 Patent and '584 Patent. Disclosure of the May 20, 1994 Quotation during examinations of the '158 Patent and '584 Patent would have prevented those patents from issuing.

100.    Upon information and belief, the Examiner for the '158 Patent did not learn of the May 20, 1994 Quotation prior to the issuance of the '158 Patent.

101.    Upon information and belief, the Examiner for the '584 Patent did not learn of the May 20, 1994 Quotation prior to the issuance of the '584 Patent.

102.    Upon information and belief, if Mr. Goade had properly disclosed the May 20, 1994 Quotation to the USPTO during examination of the '158 Patent, one or more claims of the '158 Patent would not have issued.

103.    Upon information and belief, if Mr. Goade had properly disclosed the May 20, 1994 Quotation to the USPTO during examination of the '584 Patent, one or more claims of the '584 Patent would not have issued.

## COUNTERCLAIMS

1.    Defendant and Counterclaimant Harvard Label, Inc. ("Harvard Label") asserts the following counterclaims against Plaintiff and Counterdefendant Advanced Card Technologies LLC ("ACT") and alleges as follows:

## JURISDICTION AND VENUE

2.    Harvard Label's Counterclaims arise under 28 U.S.C. §§ 2201 and 2202 and seek declaratory relief, further relief based upon a declaratory judgment or decree, costs, and attorneys' fees.  Harvard Label seeks a judicial declaration as to noninfringement, invalidity and unenforceability of U.S. Patent No. 5,720,158 (the '158 Patent) U.S. Patent No. 5,921,584 (the '584 Patent).  This Court has jurisdiction over the counterclaims under 28 U.S.C. §§ 1331, 1332 and 1338(a).   Upon information and belief, the amount in controversy exceeds $75,000, exclusive of interest and costs.

3.    Venue is proper in this district under 28 U.S.C. § 1391.

4.    Harvard Label is a corporation organized and existing under the laws of the State of California with its principal place of business at 4731 Fruitland Avenue, Vernon, California 90058.

5.    Upon information and belief, Plaintiff and Counterdefendant ACT ("ACT") is a limited liability company with its principal place of business located at 75 Montebello Road, Suffern, New York 10901.

## FIRST CLAIM FOR RELIEF

### (For Declaration of Invalidity)

6.    Harvard Label repeats and incorporates herein the allegations of Paragraphs 1-5 of its Counterclaims.

7.    The claims of the '158 Patent and the '584 Patent are invalid and void for failing to comply with one or more of the requirements for patentability specified in Title 35, U.S. Code, §§ 102, 103 and 112.

8.    An actual controversy exists between Harvard Label and ACT.   ACT sued Harvard Label for alleged infringement of the '158 Patent and the '584 Patent.  Harvard Label denies that any claims of the '158 Patent or the '584 Patent are valid.

9.    On information and belief, ACT has asserted the '158 Patent and the '584 Patent

-19-

against Harvard Label knowing that the '158 Patent and the '584 Patent are each invalid and unenforceable and having no reasonable basis for claiming infringement by Harvard Label or that Harvard Label has induced infringement of the '158 Patent and the '584 Patent making this an exceptional case within the meaning of 35 U.S.C. § 285.

10.    On information and belief, unless enjoined, ACT will continue to charge that Harvard Label, its customers, and everyone else who makes, has made, used, offered to use, sold, offered to sell, or imported Harvard Label's products have infringed or is infringing the '158 Patent and the '584 Patent and, unless enjoined, ACT will continue to threaten, institute or prosecute litigation alleging such infringement.  On information and belief, unless enjoined, the conduct of ACT will irreparably harm and will interfere with the ability of Harvard Label to sell its products.

## SECOND CLAIM FOR RELIEF

### (For Declaration of Non-Infringement)

11.    Harvard Label repeats and incorporates herein the allegations of Paragraphs 1-10 of its Counterclaims.

12.    Harvard Label and its products have not infringed, directly, contributorily or by inducement, and do not infringe directly, contributorily or by inducement, any valid claim of the '158 Patent and the '584 Patent.  Harvard Label is not liable in any respect for any infringement of the '158 Patent or the '584 Patent by anyone.

13.    An actual controversy exists between Harvard Label and ACT.  ACT sued Harvard Label for alleged infringement of the '158 Patent and the '584 Patent.  Harvard Label denies that its products infringe any valid claim of the '158 Patent or the '584 Patent or that it has engaged in any acts which constitute direct, contributory or inducing infringement of any valid claims of the '158 Patent or the '584 Patent and further denies that it has induced any acts of alleged infringement by its customers, or anyone else.  Harvard Label contends that it, its customers, and the public are entitled to make, have made, use, offer to use, sell, offer to sell, and import the accused infringing products without interference from ACT.

14.    On information and belief, ACT has asserted the '158 Patent and the '584 Patent against Harvard Label knowing that the '158 Patent and the '584 Patent are each invalid and unenforceable and having no reasonable basis for claiming infringement by Harvard Label or that Harvard Label has induced infringement of the '158 Patent and the '584 Patent making this

an exceptional case within the meaning of 35 U.S.C. § 285.

15.    On information and belief, unless enjoined, ACT will continue to charge that Harvard Label, its customers, and everyone else who makes, has made, used, offered to use, sold, offered to sell, or imported Harvard Label's products have infringed or is infringing the '158 Patent and the '584 Patent and, unless enjoined, ACT will continue to threaten, institute or prosecute litigation alleging such infringement.  On information and belief, unless enjoined, the conduct of ACT will irreparably harm and will interfere with the ability of Harvard Label to sell its products.

## THIRD CLAIM FOR RELIEF

### (For Declaration of Unenforceability Due To Inequitable Conduct Against ACT)

16.    Harvard Label repeats and incorporates herein the allegations of Paragraphs 1-15 of its Counterclaims and repeats and incorporates herein the specific allegations of inequitable conduct asserted in Harvard Label's Sixth Affirmative Defense above.

17.    The claims of the '158 Patent and the '584 Patent are unenforceable as a result of inequitable conduct.

18.    An actual controversy exists between Harvard Label and ACT.  ACT sued Harvard Label for alleged infringement of the '158 Patent and the '584 Patent.  Harvard Label denies that any claims of the '158 Patent or the '584 Patent are enforceable.

19.    On information and belief, ACT has asserted the '158 Patent and the '584 Patent against Harvard Label knowing that the '158 Patent and the '584 Patent are each invalid and unenforceable and having no reasonable basis for claiming infringement by Harvard Label or that Harvard Label has induced infringement of the '158 Patent and the '584 Patent making this an exceptional case within the meaning of 35 U.S.C. § 285.

20.    On information and belief, unless enjoined, ACT will continue to charge that Harvard Label, its customers, and everyone else who makes, has made, used, offered to use, sold, offered to sell, or imported Harvard Label's products have infringed or is infringing the '158 Patent and the '584 Patent and, unless enjoined, ACT will continue to threaten, institute or prosecute litigation alleging such infringement.  On information and belief, unless enjoined, the conduct of ACT will irreparably harm and will interfere with the ability of Harvard Label to sell its products.

## REQUEST FOR RELIEF

Harvard Label respectfully requests:

1.    That ACT take nothing by its Complaint;

2.    That the Court determine and declare that Harvard Label has not and does not infringe, contributorily infringe, or infringe by inducement any claim of the '158 Patent and the '584 Patent and that the claims of these patents are invalid, void and unenforceable due to inequitable conduct;

3.    That the Court preliminarily and permanently enjoin ACT and its agents from instituting or prosecuting any action alleging that Harvard Label, any of Harvard Label's customers, or anyone else acting in concert with Harvard Label has or is infringing, contributorily infringing, or infringing by inducement any claim of the '158 Patent and the '584 Patent by manufacturing, using, selling, offering for sale, or importing any of Harvard Label's products;

4.    That the Court award Harvard Label its costs of suit;

5.    That the Court award Harvard Label its attorneys' fees and litigation expenses pursuant to 35 U.S.C. § 285 or on any other applicable basis;

6..    That Harvard Label receive any other appropriate relief.


DATED:  February 12, 2010                    Respectfully submitted,

                                             *s/ G. Warren Bleeker*
                                             _____

                                             Thomas G. Wolfe, OBA # 11576
                                             Jason M. Kreth, OBA # 21260
                                             PHILLIPS MURRAH, P.C.
                                             Corporate Tower, Thirteenth Floor
                                             101 N. Robinson
                                             Oklahoma City, OK 73102
                                             Phone:  (405) 235-4100
                                             Facsimile:  (405) 235-4133
                                             Email: tgwolfe@phillipsmcfall.com
                                             Email: jmkreth@phillipsmcfall.com

                                                  and

                                             S. Art Hasan (CA State Bar # 167323)

-22-

art.hasan@cph.com
G. Warren Bleeker (CA State Bar # 210834)
warren.bleeker@cph.com
Christie, Parker & Hale, LLP
350 West Colorado Blvd., Suite 500
Post Office Box 7068
Pasadena, California 91109-7068
Phone: (626) 795-9900
Facsimile: 626-577-8800

Admitted *Pro Hac Vice*

**Attorneys for Defendant Harvard Label, Inc.**

# JURY DEMAND

1.      Harvard Label, Inc. demands a jury trial on all issues for which a jury trial is permitted.

DATED:  February 12, 2010                    Respectfully submitted,

                                                              *s/ G. Warren Bleeker*
                                                              _____

                                                              Thomas G. Wolfe, OBA # 11576
                                                              Jason M. Kreth, OBA # 21260
                                                              PHILLIPS MURRAH, P.C.
                                                              Corporate Tower, Thirteenth Floor
                                                              101 N. Robinson
                                                              Oklahoma City, OK 73102
                                                              Phone:  (405) 235-4100
                                                              Facsimile:  (405) 235-4133
                                                              Email: tgwolfe@phillipsmcfall.com
                                                              Email: jmkreth@phillipsmcfall.com

                                                                       and

                                                              S. Art Hasan (CA State Bar # 167323)
                                                              art.hasan@cph.com
                                                              G. Warren Bleeker (CA State Bar # 210834)
                                                              warren.bleeker@cph.com
                                                              Christie, Parker & Hale, LLP
                                                              350 West Colorado Blvd., Suite 500
                                                              Post Office Box 7068
                                                              Pasadena, California 91109-7068
                                                              Phone:  (626) 795-9900
                                                              Facsimile:  626-577-8800

                                                              Admitted *Pro Hac Vice*

                                                              **Attorneys for Defendant Harvard Label, Inc.**

GWB PAS884629.4-*-02/12/10 3:32 PM

-24-

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2010 I electronically transmitted the attached document entitled **HARVARD LABEL'S INC.'S ANSWER TO THIRD AMENDED COMPLAINT AND COUNTERCLAIMS FOR DECLARATORY RELIEF** to the Clerk of the Court using the ECF system for filing. Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants in this case: Greg A. Castro, Regina M. Marsh, Terry W. Tippens, Terry L. Watt, Thomas G. Wolfe, Jason M. Kreth, Gerrit W. Bleeker, S. Art Hasan, and Paul J. Lerner.

*Susan Lovelace*

Susan Lovelace